(July 25, 1991)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL WILLIAMS, Appellant.—Judgment, Supreme Court, Bronx County (Lawrence Tonetti, J.), rendered April 24, 1989, convicting defendant after a jury trial of criminal sale of a

controlled substance in the third degree, and sentencing him as a second felony offender to a term of imprisonment of 4½ to 9 years, unanimously affirmed.

In this buy and bust operation, defendant and co-defendant Charles Burress acted in concert to sell cocaine to undercover officers. The defendants were immediately arrested, and their identities were confirmed by the undercover officers in a drive-by identification. Additional vials of crack were recovered from defendant in a search incident to arrest.

We reject defendant's contention that the prosecutor engaged in the improper use of peremptory challenges in violation of *Batson v Kentucky* (476 US 79) for the reasons set forth in our decision on the appeal of co-defendant, *People v Burress* (164 AD2d 825, *lv denied* 76 NY2d 938). Nothing set forth in the instant appeal warrants a different result *(see, People v Rodriguez,* 139 AD2d 539, *lv denied* 72 NY2d 865). We likewise reject defendant's challenges to comments made by the prosecutor on summation and to actions taken by the court, for the reasons set forth in *People v Burress (supra)*. Again, nothing contained in appellant's brief warrants a result different from that reached in the co-defendant's appeal.

Defendant further contends that his statutory and constitutional rights to be present during a material stage of the proceedings were violated when, during jury selection, counsel, the prosecutor and the court conferred at the bench. Defendant was present in the courtroom but could not hear these discussions. It is uncontroverted that when the court read out the list of excused jurors, defendant had an opportunity, which he did not avail himself of, to confer with counsel. Similarly, defendant's assent was sought prior to the swearing in of each prospective juror. Under these circumstances any objection has been waived. *(See, People v Blake,* 158 AD2d 979, 980, *lv denied* 75 NY2d 964.) Nor is review warranted in the interest of justice, since it cannot reasonably be said that defendant was deprived of any meaningful opportunity to participate in the jury selection. Concur—Sullivan, Asch, Kassal and Rubin, JJ.

Murphy, P. J., concurs in a memorandum as follows: I concur on constraint of this Court's affirmance of the conviction of defendant's co-defendant, Charles Burress (164 AD2d 825), in which this Court, while finding unspecified improprieties in the prosecutor's summation, declined to upset the conviction upon the ground that the resulting prejudice had been dissipated by the Court's curative instructions. As the

identical summation is here at issue, principles of stare decisis dictate a vote which I would not otherwise cast.

The defendant had been arrested in a "buy and bust" operation. His defense at trial was that he had been misidentified and his attorney's summation appropriately urged that conclusion upon the jury. The full flavor of what followed cannot be captured except by extensive quotation. The court's first admonition to the prosecutor came as follows:

"MR. LOPEZ [The Prosecutor]: Was there graffiti on the buildings? So what? What about graffiti? What does graffiti have to do with this case? Again, to diver[t] your attention from the central issue.

"You heard cross-examination about beer cans and litter on the streets.

"THE COURT: Counsel, if you recall, you objected to that and I sustained the objection. It's not the issue in the case."

The next admonition followed shortly in response to the prosecutor's suggestion that the defendant's cross-examination of a chemist was to be taken as an indication of guilt.

"MR. LOPEZ: Now you heard cross-examination of the chemist and both attorneys cross-examined the chemist and you heard both attorneys put a lot of emphasis and a lot of weight as to how much the drugs weighed, was there a small portion in each vial? What was the difference—what's the difference between two and three grains?

"I submit to you, ladies and gentlemen, that if these two defendants were not guilty of selling drugs to the undercover police officers and possessing those drugs, then why make a big deal about the weight of the drug?

"MR. GREEN [Appellant's Defense Counsel]: Objection.

"THE COURT: The objection is not only sustained, the jury is to disregard that argument. Counsel is cautioned that is improper argument. They have an absolute right to question any witness put on the stand and develop any theory they want before the jury and it's extremely improper for you to suggest that to the jury or contend that they did anything improper by cross-examining the witnesses. It's bad. Don't do it! It's wrong and disregard what he said".

The prosecutor then launched into a rambling and wholly inappropriate. monologue analogizing the facts of the case to a scene out of a situation comedy.

"MR. LOPEZ: [describing 'Alice', a situation comedy] Alice worked for Mel in Mel's diner.

"Now if you will, ladies and gentlemen, let's say for argument's sake that any one of you and myself went to Mel's diner and we sat down at the counter and Alice approached us and you said to Alice, I'd like to have some eggs for breakfast and she said, sure. How many eggs would you like? And you said two. And she said, well how would you like them prepared? And you say, well, with the black-tops up.

"Now Alice, let's say for argument's sake, Alice says, well, okay. That will be ten dollars. You can pay me now. You give her the ten dollars, she walks over to Mel and Mel takes the ten dollars and puts it in the cash register. Mel prepares the eggs and Alice brings the eggs to you. I prefer not to have anything, obviously.

"Now you, unbeknownst to you while you were sitting there a creditor had walked into the restaurant. Mel had owed this person money. Let's say it was the egg salesman.

"MR. GREEN: I object.

"THE COURT: I sustain the objection but I caution you once again to disregard this analogy because there isn't any evidence whatsoever that supports the analogy. You are to disregard it. Forget about it! Put it out of your minds!"

Undeterred by the court's most recent admonition not to argue based upon evidence which was not in the case, the prosecutor forged ahead:

"MR. LOPEZ: Now ladies and gentlemen the defense counsel would like you to believe that Police Officers Polanco and Yovane and Thompson and the rest—and the rest of the backup team all conspired to set up these two individuals, that they made the whole thing up.

"I submit to you ladies and gentlemen these two individuals if you go along with that theory flatter themselves. What makes them so special that these officers would set these two individuals up?

"MR. GREEN: Objection.

"THE COURT: Sustained. The objection—There isn't any testimony that the defendants suggested to you that they were set up. The defendants have pleaded not guilty and it's the D.A.'s job to prove their guilt. Set up is a wrong phrase. Improper. You are to disregard it and you do one more like that and we have no case left".

As a final touch, the prosecutor exhorted the jury to convict "in the interest of justice":

"MR. LOPEZ: Ladies and gentlemen when I was doing voir

dire you all made a promise to me and that was that * * * if I proved my case beyond a reasonable doubt that none of you would hesitate in finding these defendants guilty, as charged. At this time I ask you all to keep to your promise and on behalf of the People of the State of New York and in the interest of justice—

"MR. GREEN: Objection.

"MR. SCHURR [Burress's Defense Counsel]: Objection.

"THE COURT: Sustained.

"The interest of justice requires a fair and impartial verdict. They don't require a guilty verdict.

"MR. LOPEZ: And on behalf of the People of the State of New York, don't buy what these two defendants have to say.

"MR. GREEN: Objection.

"THE COURT: Sustained. Mr. Lopez, you have had enough. You may sit down. You have had enough".

Pressed to the limit, the Trial Judge instructed the jury to disregard the entire summation as "improper", "inflammatory" and designed to appeal to the jury's emotions.

In response to the defendant's immediately ensuing motion for a mistrial, the court reiterated that the prosecutor's arguments had been "outrageous" and in violation of "all the rules of the Appellate Division and the Court of Appeals." The court stated that it was the first time in his 20-year judicial career that he had found it necessary to instruct a jury to disregard an entire summation, but expressed doubt as to the efficacy of even this unprecedented instruction to cure the error: "I don't know that any instruction that I have given is capable of curing the errors." The mistrial motion was, nevertheless, denied. The court, thereafter, charged the jury and, in remarks which no doubt were made out of a desire to be kind to someone the court had so recently and severely chastised, stated that the Assistant District Attorney was a fine young man and that his comments had been made "sincerely."

That the summation in this case was grossly prejudicial is unarguable. It would seem quite plain that the trial court's doubts as to the efficacy of its curative instructions were well taken. In my view, no curative instruction would have been adequate to dissipate the prejudicial effect of this summation, particularly when the effect of the instructions given was blunted by the court's subsequent comments about the prosecutor's sincerity. But, even if the People's case had been so strong as to render the prosecutor's summation irrelevant to the trial's outcome, the most serious question would remain as

to whether the integrity of the adjudicative process had not been fundamentally compromised by a conviction obtained as a result of a trial so seriously and needlessly marred.